𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

BURCH ET AL. v. HYLTON ET ALS.

December 7th, 1892.

1. PRACTICE AT LAW—*Conflicting Evidence—Verdict.*—Where the evidence is conflicting, the verdict of the jury and the judgment of the court thereon will not be disturbed.

2. IDEM—*Jurors—Irregularities—Case at bar.*—Under the circumstances in the case here there were no irregularities in the impanelling of the jury whereby the defendant was injured, and for the cause shown it was within the discretion of the trial court to reject the man drawn as juror. Code, §§ 3152, 3156.

Error to judgment of circuit court of Loudoun county, rendered April 30th, 1890, in an action wherein Hylton, Dalton & Co. were plaintiffs and E. F. Burch & Co. were defendants. The judgment being against the latter, they obtained a writ of error to this court. Opinion states the case.

*Alexander & Tebbs*, for the plaintiffs in error.

*Lee & Janney*, for the defendants in error.

FAUNTLEROY, J., delivered the opinion of the court.

A suit was instituted in the circuit court of Loudoun county, on the common law side thereof, on the 28th day of February, 1889, by Hylton, Dalton & Co. against the said petitioners, E. F. Burch & Co., wherein such proceedings were had that a final judgment in the said cause was rendered against the said E. F. Burch & Co., defendants in the said cause, on the 30th day of April, 1880, upon the verdict

of the jury, as follows : " We, the jury, find for the plaintiffs the issues joined ; and we further find for them the sum of thirteen hundred and twenty-four dollars and twenty-nine cents, with interest thereon from November 10th, 1888, until paid, the debt in the declaration mentioned, subject to a 'credit of $107.29, as of this date," &c. Thereupon the said defendants moved the court to set aside the said verdict and grant to them a new trial, on the ground that the said verdict was contrary to the law and the evidence, and was not sustained by the evidence, and was contrary to the weight of the evidence ; which said motion the court overruled, and entered the judgment complained of upon the verdict. It was proved that Hylton, Dalton & Co. were the owners, in Carroll county, of 208 head of cattle, which they agreed to sell to one James Wilkinson for the sum of $5,324.29, to be delivered on the cars at Christiansburg at that sum ; but there was a conflict of evidence as to whether the said cattle were sold to said Wilkinson for himself, or as agent for E. F. Burch & Co., for whom he had been in the habit of purchasing cattle. The said cattle were not paid for, as agreed, upon their arrival at Christiansburg, and they were shipped on the Norfolk and Western railroad, in the name of Hylton, Dalton & Co., to themselves, at Berryville, in Clarke county, Va., and two of the said firm of Hylton, Dalton & Co.—viz., Hylton and Webb—went in the cars with the said cattle to Berryville, where they found E. B. Harrison, one of the firm of Burch & Co. ; that some conversation took place between said Harrison and said Hylton in regard to the cattle having been purchased by Wilkinson as the agent of Burch & Co., in which conversation Hylton stated that Wilkinson had represented that he was purchasing the cattle for them. Whereupon Wilkinson was called, and, in his presence, and in Harrison's presence, Hylton made the statement he had made to Harrison, that Wilkinson had represented that he was pur-

chasing the cattle for Burch & Co., and that Wilkinson did not deny Hylton's statement.

There was evidence on the part of the plaintiffs to prove that E. B. Harrison, before the delivery of the cattle to him by Hylton, Dalton & Co., promised the plaintiffs to pay to them the price due for them at Christiansburg—viz., $5,324.29—within ten days; but there was a conflict of evidence as to the time when the said payment was to be made.

There was evidence to prove that Harrison told Hylton that he could go home, but if he would leave his partner, Webb, he (Harrison) would pay Webb for the cattle in ten days; but as to this there was a conflict of evidence. It was proved, as a fact, that Hylton, of the firm of the plaintiffs, did go home, and that his partner, Webb, did remain; and that, on the 16th day of October, 1888, E. B. Harrison wrote, signed, and delivered to said Webb a paper as follows:

"Received of Hylton, Dalton & Company 208 head of cattle, bought by Jas. H. Wilkinson, at $5,324.29, to be sold by us, Burch & Co. As soon as they are sold, draft to be forwarded to Jas. H. Wilkinson, and the amount named above, the purchase, to be paid over to Hylton, Dalton & Co.

"BURCH & Co.

"*October 16th,* 1888."

There was evidence to prove that E. B. Harrison asked permission of Hylton, of the plaintiffs, to move the cattle to Round Hill, in Loudoun county, as the pasturage was better, which permission he gave; but as to this point there was a conflict of evidence.

It was proved, and certified as a fact, that Webb, the junior member of the plaintiffs' firm, after receiving the aforesaid receipt of the 16th of October, 1888, returned to Carroll county, and exhibited it to his partners, who were dissatisfied

with it, expecting fully *the money* from Burch & Co.; and that the other two members immediately visited Leesburg, and on the 19th of October had an interview with E. F. Burch and E. B. Harrison, of the firm of E. F. Burch & Co., which resulted in an interview between the said E. B. Harrison, of the said firm of Burch & Co., and Hylton and Dalton, of the firm of the plaintiffs, at night of that day, in the office of John H. Alexander, attorney-at-law; at which interview it was agreed by defendants, by E. B. Harrison, of their firm, to pay to the plaintiffs $4,000, and to give a note of Burch & Co., payable to the said plaintiffs in twenty days, for the balance of the $5,324.29, with the endorsement thereon that it was not to be paid until the plaintiffs presented an order from Wilkinson, on the defendants, for $5,324.29. And on the next day, October 20th, E. F. Burch & Co. gave to the plaintiffs the check of the firm of E. F. Burch & Co. for $4,000, and also signed and delivered to them the following note—viz.:

"$1,324.29.                        *October 20th*, 1888.

"Twenty days after date we promise to pay to Hylton, Dalton & Co., or order, thirteen hundred twenty-four 29-100ths dollars, for value received. Homestead exemption waived.

"E. F. BURCH & Co."

On which was endorsed:

"This note is not to be paid until the obligees deliver to said E. F. Burch & Co., James Wilkinson's order on them, in favor of said Hylton, Dalton & Co., for the sum of $5,324.29.

"HYLTON, DALTON & Co.

"*October 20th*, 1888."

It was proved that in November, 1888, the plaintiffs, by

their attorney, Henry Heaton, presented to the defendants the following order:

" *Mr. E. F. Burch & Co.:*

" You will settle with Hylton, Dalton & Co., in place of me, for the cattle—this November 20th, 1888.

" JAMES WILKINSON."

—and demanded of the said Burch & Co. payment of their said note for $1,324.29, according to its terms; which payment they refused to make, but offering to settle with the plaintiffs upon the terms they were to have settled, as they alleged, with Wilkinson, under their alleged agreement with him to sell the cattle upon a commission.

It was proved that in January, 1889, the plaintiffs, by their attorney, Henry Heaton, presented to the defendants another order, (being the order written by John H. Alexander, attorney for Burch & Co., at the time the note of the 20th of October was executed and delivered in his office, for $1,324.29, with the said endorsement thereon to provide against the possibility that Wilkinson might have made some payments to Hylton, Dalton & Co.,) and which said order was signed and handed to plaintiffs that they might obtain the signature thereto of said Wilkinson; which said other order, written and delivered as aforesaid, was signed by said Wilkinson, as follows:

" Messrs. E. F. Burch & Co., will pay to the order of Hylton, Dalton & Co., five thousand, three hundred, twenty-four and 29–100ths dollars, and charge to account of

" JAS. WILKINSON.

" Witness:

      *D. W. Bolen,*
      *John Green.*"

But the said defendants, Burch & Co., refused to pay to the plaintiffs, or to their said attorney, the said sum of $1,324.29 named in the said note of October 20th, 1888.

At the time the said Wilkinson signed the aforesaid order on Burch & Co., to pay to the plaintiffs the $5,324.29, and in order to obtain his signature, they agreed to execute, and did execute, the following paper :

"James Wilkinson has this day signed an order directing E. F. Burch & Co. to pay us $5,324.29, which sum E. F. Burch & Co. owes for a lot of cattle which we sold to Wilkinson, and which he turned over to said Burch & Co. In consideration of said order, we hereby release said Wilkinson from all obligations of every sort in the cattle transaction, and we agree to look solely to said Burch & Co. for our pay ; and we are to take the place of said Wilkinson in the transaction with said Burch & Co., in regard to the cattle, and the matter shall stand as if said Burch & Co. had dealt with us, and not with said Wilkinson.

" Witness the following signatures and seals, this January 1st, 1889 :

"HYLTON & DALTON Co.

THOMAS DALTON,    [Seal.]

J. M. HYLTON,    [Seal.]

" Witness :

  *D. H. Bolen*,

  *John Green.*"

" This is a true copy.

" JAS. WILKINSON."

It was proved that Wilkinson had never paid the plaintiffs for their cattle, or any part of the purchase-price ; and there was evidence that in the interview in the office of John H. Alexander, the defendant, E. B. Harrison, in response to a

question put to him by his said attorney, the said Alexander, whether he owed the plaintiffs $5,324.29, admitted that he did so; and that Alexander told him to pay it; that he made some difficulty because, he said, Wilkinson might have paid the plaintiffs something; and thereupon, at Alexander's suggestion, the matter was arranged by the note and the endorsement being agreed upon. This admission was denied by E. B. Harrison, and the court certifies a conflict of evidence on this point.

The verdict of the jury solves every point of conflict in the evidence *in favor of the verdict;* and this court, upon review, must consider that Burch & Co., by E. B. Harrison, of their firm, did agree to take the cattle and pay for them in ten days; did ask and obtain permission from Hylton, Dalton & Co., the owners of the cattle, to take them to Round Hill; did admit that he, for his said firm, did owe to Hylton, Dalton & Co. $5,324.29 for the cattle; that Burch & Co., after the $4,000 had been paid and the note given October 20th, 1888, for $1,324.29, did ask for and obtain permission and ownership of the cattle; that the agreed price ($5,324.29) was due from Burch & Co. to the plaintiffs, for cattle which they had agreed to sell to Wilkinson, but for which he had failed to pay, and which he "*turned over* to Burch & Co.," to whom they were delivered by their owners, the plaintiffs; and that they did explicitly agree and stipulate in writing that they would pay, twenty days after date of October 20th, 1888, to Hylton, Dalton & Co., the said balance of the purchase-price for the cattle, upon the condition that they should be so ordered to pay by Wilkinson. The record shows that the condition was fulfilled by Hylton, Dalton & Co. And we are of opinion that the verdict of the jury is right and just, and that the circuit court did not err in overruling the motion to set it aside and to grant a new trial. It is an established rule, that where, as in this case, the evidence is conflicting, the

verdict of the jury, and the judgment of the court thereon, will not be disturbed. See 2 Munf. 478; 3 Munf. 51. And even if the evidence and the facts certified left the verdict doubtful, (which it does not,) it should not be disturbed unless it was clearly wrong. 3 Leigh 598; 6 Leigh 230; 2 Gratt. 594; 28 Gratt. 165.

It is assigned as error that Henry C. Sellman was improperly excluded from the jury, and another person substituted in his place, to the injury of the defendants in the court below. It is not complained, nor does it appear, that there was not a fair and impartial jury, or that there was any irregularity in the summoning and impanelling of the jury; and no objection was made before the jury was sworn, nor until after the verdict.

Section 3156, Code 1887, enacts that " no irregularity in drawing, summoning, returning, or impanelling jurors shall be sufficient to set aside a verdict, unless the party objecting was injured by such irregularity, or unless the objection was made before swearing the jury."

*Riticor*, and not Sellman, was drawn as a juror, and Riticor, the drawn juror, was excused, for good reason, by the judge of the circuit court; whereupon the sheriff, of his own motion, summoned Sellman. But before Sellman was sworn, or even called, he was objected to by Henry Heaton, of counsel for the plaintiffs, who were strangers, on the ground of his co-residence in and around Leesburg, and his intimate personal relations with the defendants. Whereupon the judge of the circuit court ordered the sheriff to summon *from the county* a good man in Riticor's place, who had been excused. The sheriff then summoned W. D. Thompson, a prominent and most worthy citizen of the county, in the place of Riticor, the drawn juror. The plaintiffs in error make no objection to the excusing of Riticor, nor to the fairness and competency of the juror, Thompson, but only to the rejection ʹof their

friend, Sellman, whom they actually introduce to swear that, had he succeeded in getting on the jury, he would have found a verdict for them! It was a wise and just exercise of the duty and the discretion given to the judge to reject this man, Sellman, as a juror, in section 3152, Code 1887, which enacts that any court, when not incompatible with the proper dispatch of its business, shall have power to discharge persons summoned as jurors therein, or to dispense with their attendance on any day.

The jury was the lawful judge of the conflicting evidence. A valid contract was clearly established, whereby Burch & Co. bound themselves to pay to Hylton, Dalton & Co. the sum of $5,324.29, subject to the credits given; and the circuit court was not in error in refusing to set aside the verdict and grant a new trial, upon any of the grounds alleged by the plaintiffs in error. The judgment complained of is right, and it is affirmed.

JUDGMENT AFFIRMED.