Burks, J.
This case is before us ou a writ of supersedeas awarded by one of the judges of this court to a judgment of the circuit court of the city of Richmond,, rendered in an action of assumpsit instituted in said circuit court by the plaintiffs in error (Blair & Hoge) for the benefit of Thomas P. Hoge, against the defendant in error, Nathaniel M. Wilson.
The declaration contains the common counts only, to-wit, for goods sold and delivered, for work and labor done, account stated, and the usual money counts.
The bill of particulars filed with the declaration is an account of Blair & Hoge against Wilson for “8,786 lbs. of tobacco at $8, $29,888.”
The defendant pleaded non assumpsit and payment; upon which several pleas issues were made up and tried by a jury, and a verdict was rendered for the defendant, and judgment entered thereon accordingly.
On the trial the court gave an instruction to the jury to which the plaintiffs objected. The objection was overruled and the plaintiffs excepted.
After the jury rendered their verdict, the plaintiffs, moved the court to set it aside and grant them a new trial, on the ground that the verdict was “not sustained by the evidence and was against the evidence.” The motion was overruled, and they again excepted.
The fir'st bill of exceptions sets out the facts proved on the trial, and the second bill refers to and certifies-those facts as “all the facts proved on the trial.”
It appears from the certificate of facts, that in the latter part of March 1865, Blair & Hoge (the plaintiffs), merchants of the city of Richmond, sold and delivered to the defendant Wilson, also a merchant of *167 said city, the tobacco in the bill of particulars mentioned at the price therein stated, to wit, $29,888, Confederate currency. On the first day of April ensuing, which was Saturday, "Wilson called at the business-house of Blair & Hoge in said city, and gave them his check for the said sum of $29,888 upon the Farmers Bank of Virginia, payable to Blair & Hoge or order, and on the same day Blair & Hoge deposited the check to their credit in the Bank of the Commonwealth, where they kept their bank account. Both of these banks had their places of business in said city. When Wilson gave the check to Blair & Hoge, it is certified in the bill of exceptions, that “Blair & Hoge received the check as cash and credited it to the account of Wilson as cash, as was the usual habit of Blair & Hoge in receiving checks from their customers.”
The check was not presented for payment at the Farmers Bank on the day of its date and delivery aforesaid. On the following day (Sunday) the city was evacuated by the Confederate army then occupying it, and was entered and taken possession of by the Federal army at an early hour on the next day (Monday); and all business by the banks was necessarily prevented and suspended on that day, and for several weeks thereafter, until the officers of the banks, who had left the city, returned and resumed business. In the dreadful conflagration which occurred in the city on that memorable day (the 3rd of April), the banking houses of both banks were burned, and the officers of the Bank of the Commonwealth, on their return to the city, found amongst the debris of their banking house and contents the check aforesaid, which was presented to the proper officers of the Farmers Bank at the place where the bank had resumed business for payment; but payment was declined, for the reason *168 that the officers did not know whether Wilson had funds to his credit in bank equal to the amount of the cheek. They stated, however, that if Wilson would give his certificate that he bad that amount to his credit, they would pay the check. It does not appear that Wilson was ever informed of this statement.
After the refusal of the Farmers Bank to pay the check, but how long after does not appear, Blair & Hoge had a settlement of their accounts with the Bank of the Commonwealth, and the check was surrendered to them. They did not at once present the check to Wilson for payment, or then give him notice of its non-payment by the Farmers Bank; for it seems, that on the 3rd of April when the bank buildings were burned, the business house of Wilson in the city was also burned, and there was, for a time, uncertainty and confusion as to the whereabouts of any one; as soon as they found him (but how long this was after they had received the check from the Bank of the Commonwealth was not proved,) they notified him pf the non-payment of the check by the Farmers Bank, and called on him to pay it; which he refused to do.
It sufficiently appears, that at the time the check was given, Wilson had funds in the Farmers Bank to his credit more than sufficient to pay the check; and it does not appear that he ever afterwards had a sum to his credit in the bank less than the amount of the check, and the cashier of the bank testified that if the cheek had been presented on the day of its date, he would have paid it.
It further appears that Blair & Hoge used about $70,000 Confederate currency, in paying off debts after the first, day of April, and would have used in like manner the amount of the check, if it had been paid on the day of its date or at any time thereafter *169 up to the time they notified Wilson of its non-payment by the bank, and demanded payment of him. It was proved that on the 1st day of April 1865, Confederate States treasury notes, as compared with gold, were worth at the rate of $60 of the notes for $1 of gold.
Such being in substance the facts proved, the court gave to the jury the instruction excepted to.
It is in these words: “If the jury shall believe from the evidence, that on the first day of April 1865, the defendant gave to the plaintiffs, in full payment for the tobacco mentioned in the bill of particulars, his check on the Farmers Bank of Virginia, which check was accepted by the plaintiff in full payment of the account; and the jury shall further believe that at the time of drawing the said cheek the said Wilson had good and sufficient reasons to believe that he had in hand funds to meet the said check, and the jury shall be satisfied from the evidence that in fact the said check would have been paid if it had been presented upon that day; the jury are instructed, that the receipt of said check by the plaintiffs extinguished their demand upon the account sued upon, and that they •cannot recover in this action.”
Was any error committed in giving this instruction?
It was a fact not controverted on the trial, or, if controverted, it was put beyond dispute by the proof, that in the latter part of March 1865 the plaintiffs sold and •delivered to the defendant the tobacco mentioned in the account filed with the declaration, for the sum therein stated, to he paid in Confederate currency. The amount of the account was a debt owing by the defendant to the plaintiffs. It was a fact equally well established, that the cheek was given for this debt. The suit was upon the account, to recover the amount thereof; and evidence was offered by the defendant to *170 show that the check had been given and accepted infy.ll payment and absolute discharge and satisfaction of the account. The evidence was sufficient, I think, to authorize the court to submit to the jury the deduction of the facts upon which the proposition of law-contained in the instruction was predicated. Supposing this deduction to be properly made, did the court-in the instruction mistake or misstate the law arising upon the facts?
A check has been defined to be “a draft or order-upon a bank or banking house, purporting to be-drawn upon a deposit of funds for the payment at all-events of a certain sum of money to a certain person therein named,- or to him or his order, or to bearer,, and payable instantly on demand.” 2 Daniel on Heg. Ins., § 1566.
It is sometimes inaccurately described as “a bill of exchange payable on demand,” or as, “in legal effect, an inland bill of exchange, drawn on a banker, payable to bearer on demand.” While it has many of the properties of bills, it has several peculiar characteristics.
“ Bank checks,” says Mr. Justice Sioayne, delivering-the opinion of the supreme court of the United States in the case of Merchants’ Bank v. State Bank, 10 Wall. U. S. R. 604, 647, “are not bills of exchange, bufr have many of the properties of such commercial-paper; and many of the rules of the law merchant are-alike applicable to both. Bach is for a specific sum-payable in money. In both cases there is a drawer, a. drawee and payee. Without acceptance, no action can be maintained by the holder upon either against-the drawee. The chief points of difference are, that a check is always drawn on a bank or banker. Ho days-of grace are allowed. The drawer is. not discharged *171 by the laches of the holder in presentment for payment unless he can show that he has sustained some injury by the default. It is not due until payment is demanded, and the statute of limitations runs only from that time. It is by its face the appropriation of so much money of the drawer in the hands of the drawee to the payment of an admitted liability of the drawer. It. is not necessary that the drawer of a bill should have funds in the hands of the drawee. A cheek in such case would be a fraud. All the authorities, both English and American, hold that a check may be accepted, though acceptance is not usual.” For these several propositions the learned justice cites authorities.
The giving of a check for an antecedent debt is not an absolute payment and extinguishment of the debt in the absence of an agreement giving it that effect. Ordinarily, it is only a means of payment, and the debt will not be extinguished unless and until the check be paid, or unless loss be sustained by the drawer in consequence of the laches of the holder, in which case the debt will be discharged in proportion to the loss sustained. If the check be not paid, and the payee is without fault, his right of action against the drawer for the debt, which has been merely suspended by the giving of the check, revives, and he may have recourse to the drawer either upon the debt or upon the check at his option. The holder is allowed a reasonable time after the check is drawn and delivered within which to present it for payment, and, as a general rule, it will be in due time if presented within the business hours of the bank on the next succeeding secular day, or if the holder is prevented from making presentment on that day by any impediment which in law will excuse the failure to make such presentment,. *172 it will be sufficient if it be presented within a reasonable time after such impediment is removed. Among ■ the excuses for failure to make presentment deemed valid, and which apply as well to checks as to bills and notes, the following are mentioned by Judge Story: 1. Inevitable accident, or overwhelming calamity. 2. The presence of political circumstances, amounting to a virtual interruption and obstruction of the ordinary negotiations of trade, called the vis major. 8. The breaking out of war between the country of the maker and that of the holder. 4. The occupation of the country where the parties live, or where the note is payable, by a public enemy, which suspends commercial intercourse. 5. The utter impracticability of finding the maker or ascertaining his place of residence. Story on Prom. Notes, §§ 257, 261,262, 264. See also 2 Daniel on Neg. Ins., §§ 1064, 1065.
If the check be not honored on presentment, due notice of the dishonor should be given to the drawer. If the holder use due diligence in making presentment and giving notice of non-payment, the solvency of the bank on which the check is drawn is in the meantime at the risk of the drawer: if, however, the holder fail, without valid excuse, to make demand of payment-at the proper time, after such default he assumes the risk of the solvency of the bank, and should the bank afterwards suspend business or become insolvent, the loss occasioned thereby will be the loss of the holder.
The foregoing rules, applicable to checks given as ■conditional payment, I regard as sustained by the authorities.
While, however, the giving of a check by a debtor to his creditor is generally presumed to be only a pro *173 visional or conditional payment of the debt for which it is given, yet such check, by agreement between the parties, may be given and received in full payment and absolute discharge and satisfaction of the debt.
I do not find this proposition controverted anywhere except in New York, where it seems to be held that such an agreement is invalid because without eonsidertion. The authorities in all the other states seem to uphold such an agreement when made. In some of the cases it is said the agreement must be “ express;” in others that it must be “special;” while in many others it is said that it may be either “ express or implied.” The authorities touching such agreement are collated and classified in 2 Parsons on Bills and Hotes 159, 160, 161, 162, note (t), and as there given relate mostly to bills of exchange and promissory notes. I see no good reason, however, why the rule should not apply as well to a cheek as to a bill or note, nor why the agreement may not as well be implied as express.
To make the agreement however valid, whether it be express or implied, it must, of course, be bona fide ; and hence, to warrant the conclusion of law propounded in the instruction, it was not only necessary that the check should have been given and received in full payment of the account sued upon, but it must have been drawn against sufficient funds; and if the check was so given and received, and there was such sufficient funds to meet it, which would have been applied to its payment if presented on the day it was given, was not the debt sued upon extinguished by the check, and were the plantifis entitled to any recovery in the action ?
As before stated, the declaration contained only the-common counts. There was no count on the check. It is true, that although there was no special count on *174 the cheek, it might have been offered in evidence on the money counts, and if there had been no other evi- - deuce in the case, it would of itself have been sufficient to entitle the plaintiffs to recover on those counts. 4 Rob. Prac. 548, and cases there cited. But the check was only prima facie evidence of money lent, paid and advanced, or had and received; and when it was proved that no money had come to the hands of the defendant, the presumption raised by the check was rebutted, and consequently no recovery could be had on those counts. Bank of the United States v. Jackson’s adm’x, 9 Leigh 221.
The only count in the declaration to which the evidence applied was the count for goods sold and delivered, under which the account, as a bill of particulars, was filed; and if the goods (the tobacco) were paid for absolutely by the check, then “the demand upon the account sued upon” was thereby extinguished, and there was no count in the declaration upon which the plaintiffs could recover. Sheehy v. Mandeville & Jameson, 6 Cranch’s R. 253; Slocumb’s adm’r v. Holmes’ adm’r, 1 Howard (Miss.) R. 139.
Whether under the evidence the action could have been maintained on the check, if it had been specially declared upon, it is not necessary in this case to decide.
I find no error in the instruction given to the jury.
Did the court err in overruling the motion of the plaintiffs for a new trial ?
I regard the certificate of the judge in this ease as a certificate of the facts proved on the trial, and not a certificate of the evidence, and this is the more favorable view for the plaintiffs. The judge certifies as facts proved, that the defendant gave his check to the plaintiffs for the amount of his indebtedness for the tobacco sold, and that the check was received by the *175 plaintiffs as cash, and credited to the defendant as cash, as was the usual habit of the plaintiffs in receiving -checks from their customers, and that the plaintiffs deposited the check, on the day it was received, to their credit in the Bank of the Commonwealth. Cash is “money at command; ready money.” Worcester. “Cash (commerce) is money on hand, which a merchant, trader or other person has to do business with.” Bouv. Law Die. 240. To receive a check therefore “ as cash ” is to receive it as money—ready money, and imports a payment of the debt for which it was given. If there was any doubt as to the intention of the parties in thus giving and receiving the check, it was for the jury to solve that doubt. Every reasonable presumption should be made in support of the verdict of a jury fairly rendered, and according to the long established well settled rule of this court, such a verdict cannot ‘ be set aside as against the evidence, unless there is a plain deviation—unless the evidence is plainly insufficient to warrant the finding. Many of the eases, the earlier and the more recent, establishing this rule in Virginia, are cited and commented upon by Judge Moncure in delivering the opinion of the court in Read’s ■case, 22 Gratt. 924.
I cannot say that the evidence in this ease was insufficient to warrant the verdict; certainly, as it appears to me, it was not plainly insufficient.
If there had been no evidence tending to shew a satisfaction of the debt sued upon by the check given and received, it is still not very clear that the plaintiffs were not guilty of laches by which loss was sustained by the defendant. But, with my views of the ease already expressed, it is not necessary to proceed further in our inquiries.
*176 I am of opinion, that there is no error in the judgment of the circuit court of the city of Richmond, and that said judgment should be affirmed.
Moncure, P., and Anderson, J., concurred in the opinion of Burks, J.
Christian and Staples, Js., dissented.
Judgment arrirmed.