# Richmond.

## Kewanee Private Utilities Co. v. Norfolk Southern Railroad Company.

### March 16, 1916.

1. Payment—*Effect of Giving and Accepting a Check.*—The giving of a check for an antecedent debt is not an absolute payment and extinguishment of the debt in the absence of an agreement giving it that effect. Ordinarily, it is only a means of payment, and the debt will not be extinguished unless and until the check is paid, or unless loss be sustained by the drawer in consequence of the *laches* of the holder, in which case the debt will be discharged in proportion to the loss sustained. If the check be not paid, and the payee is without fault, his right of action against the drawer for the debt, which has been merely suspended by the giving of the check, revives, and he may have recourse to the drawer either upon the debt or upon the check at his option.

2. Carriers—*Wrongful Delivery—Remedies of Shipper—Ratification—Acceptance of Check.*—Where goods are shipped to the order of the consignor, and a sight draft is drawn upon the purchaser for the price thereof with the bill of lading attached, which is to be surrendered and the goods delivered to the purchaser only upon the payment of the draft, and the carrier, with knowledge of the stipulation upon the bill of lading, delivers the goods to a subvendee of the purchaser, without payment of the draft or surrender of the bill of lading, the seller has several remedies: He may sue the purchaser on the original transactions; he may sue the subvendee who obtained the goods, or he may sue the carrier for the wrongful delivery. If he sues the carrier, the mere fact that some ninety days after the wrongful delivery the purchaser gave the agent of the seller his check for the amount of the bill is no bar to the action. The mere acceptance of the check without any agreement to receive it in payment and discharge of the debt owing by the drawer, and when the liability of the carrier was not in the contemplation of the parties and it has suffered no injury therefrom, is not a ratification of the wrongful delivery, and, the check being dishonored, the carrier remains liable.

3. Carriers—*Wrongful Delivery—Ratification—Proof Required.*—In order to release a common carrier from an admittedly wrongful act

upon the ground that the person injured thereby has condoned and ratified it, it should plainly appear that the ratification was intended and took place with full knowledge on the part of those to be affected thereby of all the material facts.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of trover. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*E. R. F. Wells,* for the plaintiff in error.

*James G. Martin,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The Kewanee Private Utilities Company, a private corporation, brought suit against the Norfolk Southern Railroad Company for the wrongful delivery of certain freight. There was a verdict and judgment in favor of the defendant, to which a writ of error was awarded.

The facts are as follows: In September, 1914, one H. H. Elliott ordered from the Kewanee Private Utilities Company, through its New York sales agent, two water systems, for each of which he agreed to pay $195.25, less a certain discount if payment were made promptly. It was agreed between the plaintiff and Elliott that the water systems were to be shipped to the order of the plaintiff as consignee, with instructions on the bills of lading to notify Elliott and that drafts were to be drawn on Elliott for the purchase price of each water system, to which drafts the corresponding bills of lading were to be attached, and together sent to a Norfolk bank for collection. The bills of lading were to be delivered to Elliott only on the payment of the drafts.

These shipments are commonly known as shipments "to order notify"—that is, the bill of lading is made out to the

order of the consignor as consignee, with written directions on it to notify the person on whom the draft, to which the bill of lading is attached has been drawn; so that this person can pay the draft, obtain the bill of lading and thereby get possession of the shipment from the carrier.

In accordance with the terms of this agreement with Elliott, the plaintiff, during the month of September, 1914, shipped two water systems to its own order, one being consigned to itself at Pungo, Princess Anne county, Virginia, a point on the line of railroad of the Norfolk Southern Railroad Company, and the other consigned to itself at Back Bay, Princess Anne county, Virginia, another point on the line of the Norfolk Southern Railroad Company. The shipments were made to these points at the request of Elliott, who expected to sell these water systems to farmers residing near those points. Certain portions of each water system were shipped by the plaintiff from Kewanee, Illinois, and certain other portions were shipped by it from its factory at Lancaster, Pa., separate bills of lading being taken for each shipment. Each bill of lading contained the following provision: "The surrender of the original order bill of lading, properly endorsed, shall be required before the delivery of the property."

In due course of time these water systems were received by the Norfolk Southern Railroad Company, the terminal carrier, and were transported by it to the respective points of destination. The drafts with bills of lading attached were sent on to the Norfolk National Bank of Norfolk, Virginia, for collection, and Elliott received notification from the bank, but paid no attention to the notice and did not pay the drafts. Accordingly, after holding the drafts for some little time, the bank returned them, with the bills of lading attached, to the plaintiff at Kewanee, Illinois, and they never have been paid by Elliott or anyone else.

In the meantime Elliott, who was in no sense the plaintiff's agent, had on his own account effected sales of the two water

systems to two farmers in Princess Anne county, and they had obtained possession of them from the respective agents of the Norfolk Southern Railroad Company at Pungo and Back Bay, who delivered the water systems to the farmers without requiring the presentation and surrender of the bills of lading. The plaintiff was not informed of these facts until some time after, in the month of December. The drafts not having been paid by Elliott, the plaintiff in December, 1914, sent its New York sales agent, F. E. Swan, to Norfolk to take up this matter with Elliott, and to try to effect a collection from him of the money on the drafts. On December 10, 1914, Swan had an interview with Elliott, when for the first time he was informed by Elliott that the railroad company had delivered these systems to two of his subpurchasers. Swan then told him that he would go down to these two stations on the Norfolk Southern Railroad and make some investigation of the agents as to why they had disposed of these water systems as they had done, but Elliott told him that he would be wasting his time and car fare, and that he would give him a check for the entire amount due. Thereupon, Elliott gave Swan his check on the National Bank of Commerce of Norfolk, Virginia, dated December 10, 1914, payable to the order of the Kewanee Private Utilities Company, for the sum of $382.70, the amount of the purchase price of the two water systems, less discount, but requested Swan not to present it for payment until the following Monday or Tuesday, for the reason that he did not have any money in bank to meet it. This was agreed to.

Swan took the check, but did not surrender to Elliott the drafts and bills of lading, which were at that time in Swan's possession, nor did he give Elliott any receipt for the check or have any other agreement with him in reference to the check than that above mentioned. He mailed the check to the New York office of the company; from there it was sent to the home office at Kewanee, Illinois, and in due course it was sent to the National Bank of Commerce, of Norfolk, Virginia,

for collection, and was dishonored. Nothing whatever has ever been paid to the plaintiff on account of the purchase price of these water systems, or on account of this check.

On January 16, 1915, written demand was made on the Norfolk Southern Railroad Company for the value of these shipments, which demand was refused, and shortly thereafter this action was instituted by the plaintiff against the railroad company to recover the value of the shipments.

At the conclusion of the evidence the plaintiff prayed the court to grant two instructions, both of which were refused, and on motion of the defendant the court granted the following instruction:

"The court instructs the jury that if they believe from the evidence that after the railroad company delivered the property the plaintiff accepted a check from Mr. Elliott, such acceptance amounted to a ratification of the delivery, and they must find for the defendant, even though the check was not paid."

The two instructions asked for by the plaintiff are as follows:

1. "The court instructs the jury that if they believe from the evidence that the defendant railroad company delivered to persons other than the plaintiff the shipments mentioned and described in the declaration, without obtaining the surrender of the bills of lading therefor, or without authority from, or subsequent ratification by the plaintiff, the holder of the bills of lading, then the plaintiff is entitled to recover of the defendant the value of the goods with interest from the date of delivery."

2. "The court instructs the jury that the giving of a check by a debtor to his creditor for an antecedent debt is not an absolute abatement and extinguishment of that debt in the absence of an agreement between the parties giving it that effect; it is only a means of payment and the debt will not be extinguished unless and until the check be paid. If, therefore, at the time the plaintiff accepted the check from H. H. Elliott, it did not by agreement receive it in full payment and

absolute discharge and satisfaction of the debt owing by him to the plaintiff, then the mere fact that said check was accepted by the plaintiff does not preclude it from maintaining this action against the railroad company."

To the refusal of the court to grant instructions 1 and 2 asked for by the plaintiff in error and the granting of the instruction, No. 3, asked for by the defendant in error, the plaintiff in error, by its attorney, then and there excepted, and now assigns as error, (1) the refusal of the court to grant instructions Nos. 1 and 2, prayed for by it; (2) the action of the court in granting instruction No. 3, prayed for by the defendant; (3) the refusal of the court to set aside the verdict and grant a new trial, on the ground that the verdict was contrary to the law and the evidence; and (4) the refusal of the court to render a judgment in favor of the plaintiff *non obstante veredictoc.*

We shall first consider whether or not the trial court erred in refusing instructions 1 and 2, offered by plaintiff in error.

In *Blair & Hoge* v. *Wilson,* 28 Gratt. (69 Va. 165, Judge Burks, in treating of this subject, says: "The giving of a check for an antecedent debt is not an absolute payment and extinguishment of the debt in the absence of an agreement giving it that effect. Ordinarily, it is only a means of payment, and the debt will not be extinguished unless and until the check be paid, or unless loss be sustained by the drawer in consequence of the *laches* of the holder, in which case the debt will be discharged in proportion to the loss sustained. If the check be not paid, and the payee is without fault, his right of action against the drawer for the debt, which has been merely suspended by the giving of the check, revives, and he may have recourse to the drawer either upon the debt or upon the check at his option."

In the case before us there is no evidence whatever that the check has been paid, that any loss was sustained by the drawer in consequence of the laches of the holder, or of any agreement

whatever making the giving of the check an absolute extinguishment of the antecedent obligation. That case is the unquestioned law of this State. That there was an antecedent obligation upon Elliott's part appears from the undisputed facts. He was the principal actor in the transaction. He it was who ordered the water systems from the plaintiff in error, and it was in consequence of his order that the water systems were delivered to the Norfolk Southern Railroad to be transported to their destinations. That the delivery was wrongful does not admit of dispute. The freight was delivered in violation of an express stipulation upon the bill of lading, known to the railroad company, that "the surrender of the original order bill of lading, properly endorsed, shall be required before the delivery of the property." The Kewanee Private Utilities Company had several remedies: It could have sued Elliott on the original transaction; it could have sued the farmers who purchased the water systems; and it could have sued the railroad company for the wrongful delivery. The contention of the defendant in error, while it admits that there was at one time a right of action against the railroad company, is that the right was lost by reason of a check having been given by Elliott to the agent of the Kewanee Company, and thereby the wrongful act of the railroad company in making delivery contrary to the terms of the bill of lading was condoned and the delivery ratified.

As we have said, there was a right of action upon the part of the plaintiff in error against Elliott, and upon the authority of *Blair & Hoge* v. *Wilson, supra,* under the circumstances under which the check was given and received by the agent of the Kewanee Company that obligation continued in full force and effect. It is certain that Elliott, if sued, could not have successfully pleaded the giving of that check as a defense to the demand against him, and yet it is contended that a check fraudulently given by Elliott to the Kewanee Company, which was wholly ineffectual as to his obligation, constituted a ratifi-

cation of the wrongful delivery made by the railroad company. There is nothing to indicate such an intent upon the part of the Kewanee Company. There is nothing to indicate that the liability of the railroad company was in contemplation of the parties when the check was given and received. The agent of the Kewanee Company was on his way to investigate the occurrence, to find out why it was the freight was wrongfully delivered, and he was hindered from the prosecution of this purpose by the suggestion of Elliott that it would be a waste of time and money, and that he himself was ready to satisfy the demand of the Kewanee Company by giving a check. In giving that check he, of course, represented that he had funds to meet it in bank, or would have if the presentation was delayed until the following Tuesday. He alone knew that that representation was false and that the check upon presentation would be dishonored. There was not a suggestion that it was received in satisfaction of the demand. There was not a suggestion that it was the intention, by the acceptance of the check, to ratify the act of the railroad company; and there is not a suggestion that there was a loss to any one, or that the railroad company was placed in a worse position by reason of the fact that the check was received as a means of obtaining satisfaction.

Several cases are earnestly relied upon by the defendant in error in support of its views, chief among which is *Rathbun* v. *Citizens' Steamboat Co.,* 76 N. Y. 376, 32 Am. Rep. 321. Rathbun shipped by the steamboat company certain goods marked "C. O. D." Defendant accepted of the consignee his check, payable to the plaintiff's order for the sum stated. This was delivered to and accepted by plaintiffs, who transmitted it for collection, and it was returned protested. It was held that the unconditional acceptance of the check by plaintiffs was a waiver of the requirement to collect the money, and a ratification and adoption of the defendants' act in receiving it; and that, therefore, plaintiffs were not entitled to recover; also, that it was immaterial whether or not the drawer had funds

in the bank at the time of accepting the check, or whether funds had been withdrawn intermediate to the drawing and acceptance of it; and that the plaintiffs, by accepting the check, took that risk. In the course of the opinion the learned judge said: "There is no dispute but that the defendant would have been liable if the plaintiffs had refused to accept the check or had accepted it in a qualified manner, but the question is whether the unconditional acceptance of the check did not amount to a waiver of the requirement to collect the money or a ratification of the act of receiving the check in lieu of the money. The learned counsel for the plaintiffs relies mainly upon two positions. 1st. That this is the case of receiving a note or check of a third person for an antecedent debt or obligation, the rule being that such note or check is not to be deemed a payment unless an agreement to that effect is made. 2d. That it is not a ratification because the principal was ignorant of the fact that there were no funds. As to the first proposition the answer is, that there was no pre-existing debt, the payment over of the collection was but the consummation of a single transaction. The defendant received this check as money; it was optional with the plaintiffs to receive it as such or not. It was delivered to them as such. The only rational construction of the transaction if put in language is, that the defendant said, I delivered your property and took this check instead of money, will you receive it as such? to which the plaintiffs assented, and accepted it."

In the case before us there was an antecedent obligation, as we have said, on the part of Elliott to the Kewanee Company, and in the second place, there is no evidence whatever—not the merest scintilla of evidence,—that that check was received as money. In the opinion just quoted it would seem that in the absence of evidence that the check was received "in a qualified manner," the presumption would be that it was received in full payment and satisfaction; but that is not the doctrine of *Blair & Hoge* v. *Wilson, supra,* which says, "The

giving of a check for an antecedent debt is not an absolute payment and extinguishment of the debt in the absence of an agreement giving it that effect. Ordinarily, it is only a means of payment, and the debt will not be extinguished unless and until the check be paid," etc.

In *Southern Ry. Co.* v. *Kinchen & Co.*, 103 Ga. 186, 29 S. E. 816, it was held that "Though goods may have been shipped upon a bill of lading the production of which was, by its terms, essential to a lawful delivery of the goods to the person for whom they were intended, the purpose being that this person should pay for the goods before obtaining possession of them, yet where the consignor, after receiving information that the goods had in fact been delivered without the production of the bill of lading, and knowing that payment had not been made, drew a draft, payable thirty days after its date, upon the other party, took an acceptance thereof, and undertook its collection through a bank, this, though the collection was not in fact made, was such an abandonment of the original purpose of requiring payment on delivery, and such a ratification of the delivery if actually made, as would relieve the carrier from liability for having made delivery without requiring the surrender of the bill of lading." The court also found, in that case, that "Excluding the illegal evidence which was improperly admitted, there was no proof authorizing a finding that the defendant had really delivered the goods in controversy without the presentation of the bill of lading, and therefore the verdict in the present case was contrary to the evidence." Which latter statement, we think, detracts from the force of the decision upon the other point, if it does not wholly destroy it. But apart from that consideration, it seems to us that the facts in support of an intention to ratify are different from those in the case before us and far more persuasive as to the intention of the parties, which is the controlling consideration.

In *Converse* v. *Boston and Maine Railroad,* 58 N. H. 521, the general statement is made, that a common carrier's unau-

thorized delivery of goods may be ratified by the consignee—
which, of course, is not questioned. In the course of the opinion
the court said: "If the delivery was authorized, the plaintiffs
have no claim against the defendants. If the delivery was
unauthorized, and they subsequently ratified it, the ratification
is equivalent to an authorized delivery, and is an effectual bar
to the plaintiff's recovery. The court then goes on to say:
"The plaintiffs knew the slate had been delivered. They sued
C. to recover the pay for them, basing their claim upon a sale
and delivery. They took an order on the district for their
pay, and gave C. a bill of the slate receipted. The order was
not paid; and they entered their suit in court, and continued
it until the third term. They neglected to make any claim upon
the defendants until more than four months after the delivery
to C. was known to them, and after the commencement of their
suit against C. to recover their pay. Upon the most favorable
view of this evidence, there was nothing upon which the jury
could properly find a verdict for the plaintiffs. Here was no
evidence in favor of the plaintiffs to be weighed by the jury,
no inferences were to be drawn from facts proved, nor was the
credibility of witnesses to be passed on. Upon the uncontra-
dicted testimony of the plaintiffs, the delivery by the defendants
to C. was ratified. The court should therefore have directed
a verdict for the defendants."

In *Lester* v. *Delaware, L. & W. R. Co.*, 92 Hun. 342, 36 N.
Y. Supp. 907, it was held that, "Where a carrier delivers
goods to the wrong person, the fact that the owner receives
payment from such person for a portion of the goods does not
constitute a waiver of his claim against the carrier for the
balance, if he does not intend such waiver."

It seems to us that the actual payment of a part of the money
is more persuasive of ratification than the giving of a fraudu-
lent check. It will be observed too, that the intention with
which the money was paid was the controlling consideration
with the court, and we repeat that in the case under considera-

tion there is no evidence whatever of intent upon the part of the Kewanee Company to ratify the wrongful act of the defendant. Such ratification would be, we think, an arbitrary deduction from the facts which do not warrant such a conclusion.

In *Blowers & Co.* v. *Canadian Pac. Ry. Co.*, (C. C.) 155 Fed. 935, the syllabus says: "A carrier or a warehouseman is liable in trover for the wrongful delivery of goods intrusted to it for shipment or storage; but such right of action may be waived by any action which ratifies the delivery, and thereby deprives the carrier or warehouseman of the right to recover over against the person to whom the delivery was made.

"Plaintiff delivered to defendant railroad company a shipment of apples covered by bills of lading with drafts upon the consignee attached. Defendant delivered the apples without collecting the drafts, and on learning such fact plaintiff entered into correspondence with the consignee and obtained part payment and the consignee's acceptances for the remainder. *Held,* that the effect of such action was to ratify the delivery and pass title to the apples to the consignee, which precluded plaintiff from recovering from the defendant for conversion."

In the course of opinion the court said: "As to what constitutes a waiver or ratification depends upon the particular facts of each case. The transaction between these parties, analyzed to its ultimate, is this: The plaintiff, after having discovered that the apples had been wrongfully delivered to Chipman, had one of four remedies: (1) It could have relied upon the liability of the defendant, and ignored Chipman and his possession of the apples altogether. (2) It could have sued for the possession of the apples which had wrongfully come into Chipman's hands. (3) It could have sued Chipman for conversion. (4) It could have waived the tort and sued Chipman for the purchase price, or, perhaps, for the reasonable value. It did waive the tort by accepting part payment of the purchase price, taking what was in effect Chipman's note for the balance, and extending the time. The effect of

this was to transfer the title of the apples to Chipman. After that transaction it could neither recover the apples nor sue for conversion, and its only remedy as against Chipman was to rely upon a sale which had been fully consummated. However the plaintiff should deal with the matter, in any event it was bound by the fact that a sale and delivery had been made, and that it must rely upon an executed contract. If, then, the plaintiff could not have asserted its right to possession as against the defendant, and if it could not sue Chipman for conversion, it cannot sue the defendant for the same thing, because it has ratified the wrongful act of the defendant by dealing with Chipman beyond the mere demand for payment, which has never been held to amount to ratification, for that is in the interest of both parties. . . . The acts here were all done prior to any claim being made against the defendant, which put it in a situation where it could not avail itself of any adequate remedy by way of protection. The plaintiff cannot put the defendant in a position which deprives it of a remedy for recouping its loss, and yet compel it to pay that loss. If, after the settlement made with Chipman, the defendant had sued him for possession or for the value of the apples, he could have successfully defended, upon the ground that he had made part payment, had given his note for the balance, and that the title thereby passed to him. Upon discovering the situation, plaintiff was put to its election; and it made that election, which precludes it from asserting that against the defendant which it could not assert against Chipman."

It will be seen that an influential factor in the conclusion reached by the court in that case was that the act of the plaintiff had put the defendant in a position which deprived it of a remedy against the person to whom the wrongful delivery was made, an element which was wholly absent in this case. There is no pretense that the railroad company lost any right or remedy by reason of what took place between the plaintiff in error and Elliott.

In *Walker* v. *Walker,* 52 Tenn. (5 Heisk.) 425, an "agent for the collection and transmission of a sum of money being instructed by his principal to remit by express, purchased a check drawn by parties in good standing and credit on New York, and forwarded it to his principal. The principal sent check to New York for payment, but before it was cashed the drawers became insolvent and the check was dishonored and not paid. *Held,* the agent having violated his instructions in regard to the mode of transmitting the money, rendered himself liable to his principal for the loss incurred, and sending the check to New York was no ratification by the principal of the act of the agent in buying the check."

The case under consideration involves a very important principle. That the railroad company was guilty of a wrongful delivery of the goods cannot be questioned; that that wrongful act was capable of ratification is equally beyond question; but in order to release a common carrier from an admittedly wrongful act upon the ground that the person injured thereby has condoned and ratified it, we think it ought plainly to apear that the ratification was intended and took place with full knowledge on the part of those to be affected thereby of all the material facts.

Upon the whole case we are of opinion that the instructions asked for by plaintiff in error should have been given, and that given on behalf of the defendant in error should have been refused.

The judgment complained of will be reversed and the cause remanded for a new trial to be had therein in accordance with the views expressed in this opinion.

*Reversed.*