**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1048**

DEVIL'S ADVOCATE, LLC; JOHN W. TOOTHMAN,

    Plaintiffs - Appellants,

    v.

ZURICH AMERICAN INSURANCE COMPANY,

    Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:13-cv-01246-TSE-TRJ)

Argued: September 21, 2016        Decided: November 22, 2016

Before WILKINSON and FLOYD, Circuit Judges, and Irene M. KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** John William Toothman, Great Falls, Virginia, for Appellants. Kelly Marie Lippincott, CARR MALONEY P.C., Washington, D.C., for Appellee. **ON BRIEF:** Sarah W. Conkright, CARR MALONEY P.C., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Devil's Advocate, LLC, and John W. Toothman ("Appellants") sued Zurich American Insurance Company ("Zurich") for breach of contract, unjust enrichment, conversion, unauthorized use of name, trademark infringement, and copyright infringement. After the district court dismissed all of their claims, Appellants timely appealed.[1] Finding no error, we affirm the judgment of the district court.

I.

Appellant John W. Toothman is a lawyer and the founder of Devil's Advocate, a consulting firm that provides expert testimony regarding the reasonableness of legal fees. In 2008, Appellee Zurich became embroiled in a coverage dispute in state court in Harris County, Texas (the "Texas litigation").[2] On October 12, 2010, Blair Dancy, a lawyer representing Zurich in the Texas litigation, contacted Toothman about serving as an expert witness regarding the reasonableness of the attorneys'

---

[1] The district court's orders, the hearing transcripts, and the docket do not indicate whether it dismissed the claims with prejudice. For our purposes, we assume that the district court dismissed those claims with prejudice and affirm as such.

[2] See Sterling Chemicals, Inc. v. Zurich American Insurance Co., et al., Cause No. 2008-09808 (234th Jud. Dist. Ct., Harris Cty., Tex.)

fees billed by defense counsel in the case. Toothman responded by email, indicating his availability and attaching a copy of a blank form billing agreement ("Billing Agreement"), his resume, and additional information about Devil's Advocate's services. The Billing Agreement included no fee terms, leaving several blank spaces where the parties could later insert such terms should they reach an agreement. Neither Dancy nor anyone else representing Zurich signed the Billing Agreement.

Less than a month later, on November 2, 2010, Dancy asked Appellants to provide a proposal for services to include review of billing records and other pertinent information relevant to the disputed defense fees, as well as providing potential trial testimony. Toothman responded with an email proposal ("Proposal"), which stated: "Assuming we review at least $4 million in bills (fees and expenses) and the bill formats are consistent with the sample bill you provided, we are quoting a fee for your project of 2.1% of the gross amount of the fees we would review and report upon." J.A. 314. Further, it made plain that "[t]his proposal is preliminary, prior to our engagement and full review of available information." J.A. 315. Toothman did not include a completed Billing Agreement with his email.

Toothman contacted Dancy two days later to determine if he had received the Proposal. After confirming that he had, Dancy

3

informed Toothman that "[t]he client's mulling it over." J.A. 322. Toothman followed up four days later, on November 8, 2010, with an email inquiring whether there had been "[a]ny word yet from Zurich" regarding the Proposal. J.A. 294-95; J.A. 322.

No later than November 19, 2010, Dancy informed Toothman by telephone that Zurich would not accept the Proposal because the parties still needed to negotiate the price of the proposed services. Dancy also notified Toothman that, because the deadline for designating experts had passed, Zurich needed leave of court to designate him as an expert witness. Dancy explicitly stated that such designation was a condition precedent to Zurich's acceptance of Toothman's Proposal. Ultimately, although Toothman continued to negotiate his fee with Dancy, the parties never reached an agreement.

In an email update dated November 16, 2010, Dancy advised Toothman that the court in Texas had postponed the trial and pre-trial conference in the litigation, a development that impeded Zurich's ability to amend its expert designation to include Toothman. Toothman responded to this news on November 19, 2010: "Just checking in. I'm assuming this may be shut down for some time, but the more time we can spend on the review, the better." J.A. 408-09. Also on the 19th, Dancy served opposing counsel in the Texas litigation with Zurich's proposed amended

4

expert designation naming Toothman. Thereafter, in an email dated December 2, 2010, Toothman acknowledged that Zurich had not yet hired him. J.A. 296; J.A. 410 ("I'll be careful, if I ever get hired.").

The next day, Dancy filed an amended motion for a Rule 166[3] pretrial conference in the Texas litigation, seeking leave to amend Zurich's expert designation and attaching the amended designation naming Toothman.

Toothman was aware that Zurich needed court approval of his late designation before it could accept Appellants' Proposal. In a December 8, 2010, email to Dancy, Toothman confirmed that, although Zurich had provided his name to the court, he knew he had not yet been retained to perform any work under the Proposal.

On December 13, 2010, Toothman again emailed Dancy, advising him that "[i]n case this thing goes forward," the total amount of legal fees he had received for review was just under $3.5 million, a difference of $500,000 from the $4 million originally estimated in the Proposal. J.A. 297; J.A. 422. The next day, he acknowledged to Dancy that Zurich had neither

---

[3] Rule 166 of the Texas Rules of Civil Procedure provides that the Court may conduct pre-trial conferences to, among other reasons, take up pending motions.

accepted the Proposal nor retained him: "[I]s there any way to make sure Zurich's ready to go right after the hearing, e.g., by approving our agreement and cutting the initial check?" J.A. 297; J.A. 428.

Finally, on December 29, 2010, Toothman sent Dancy the following email: "Attached is the paperwork to get this project going once you decide what to do. . . . We would start as soon as we received the signed agreement and initial payment." J.A. 297; J.A. 430. Attached was a Billing Agreement listing a flat fee of $69,233.82, based on 2.0% of the gross amount of fees and expenses subject to review, estimated by Toothman to be at least $3.4 million. This was the first Billing Agreement submitted by Toothman that included a specific fee estimate. Also attached was an invoice totaling $34,616.91, purportedly representing one-half of the estimate. Dancy never signed this Billing Agreement and denies ever agreeing to its terms.

On January 13, 2011, Toothman emailed Dancy, claiming "[payment of the full fee was triggered when Zurich designated me as its expert on December 3, 2010." J.A. 433. He also attached an account statement, with two invoices totaling $69,233.82. Dancy called Toothman on January 17, 2011, to discuss the email and invoices, but Toothman terminated the call. Zurich then concluded that it could not work with Toothman

6

and withdrew its request for leave to designate him as an expert witness in the Texas litigation. It confirmed this to Toothman in a letter dated January 17, 2011. J.A. 438-40.

Toothman and Devil's Advocate responded by suing Zurich in the Circuit Court for Fairfax County, Virginia in February 2011. Several days prior to trial, however, they voluntarily dismissed their claims pursuant to Virginia's nonsuit statute. Later, on October 7, 2013, they sued Zurich in the Eastern District of Virginia, alleging claims of breach of contract, unjust enrichment, conversion, unauthorized use of name, trademark infringement, and copyright infringement.

The district court granted in part Zurich's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), dismissing Appellants' claims for unjust enrichment, conversion (except as to Toothman's name and reputation), unauthorized use of name, trademark infringement, and copyright infringement (except as to Toothman's resume). It later denied Appellants' motions for reconsideration and to amend their complaint. Finally, after the conclusion of discovery, it granted Zurich's motion for summary judgment on all remaining claims.

## II.

Appellants challenge the district court's dismissal of several of their claims for failure to state a claim, its

7

dismissal on summary judgment of their remaining claims, and its denial of leave to amend their complaint. We review de novo the district court's dismissal for failure to state a claim, for which we accept the pleaded facts as true. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). To survive dismissal, the complaint "must contain 'enough facts to state a claim for relief that is plausible on its face.'" Id. at 214 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

We also review de novo the district court's decision to grant summary judgment, applying the same legal standards that guided the district court. Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014). Thus, "we view the facts and draw all reasonable inferences in the light most favorable to the non-moving party." Hoschar, 739 F.3d at 169 (quoting Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013)).

Finally, we apply an abuse of discretion standard when reviewing the district court's decision to deny Appellants' motion for leave to amend their complaint. We turn now to each of Appellants' claims and address them in order.

A.

We begin with the district court's dismissal of Appellants' claim for unjust enrichment pursuant to Fed. R. Civ. P. 12(b)(6). In order to state a claim of unjust enrichment under

8

Virginia law, a plaintiff must sufficiently allege that "(1) he conferred a benefit on [the defendant]; (2) [the defendant] knew of the benefit and should have reasonably expected to repay [the plaintiff]; and (3) [the defendant] accepted or retained the benefit without paying for its value." Schmidt v. Household Fin. Corp., II, 661 S.E.2d 834, 838 (Va. 2008). A plaintiff "must plead facts showing that it actually conferred a benefit." Odyssey Imaging, LLC v. Cardiology Assoc. of Johnston, LLC, 752 F.Supp.2d 721, 725 (W.D. Va. 2010) (emphasis added).

Appellants' complaint contained only conclusory allegations regarding actual benefits conferred on Zurich. Indeed, the only benefits alleged were items and services Appellants provided free of charge during the proposal process. Appellants, moreover, were fully apprised that Zurich intended to use some of that material in an effort to amend its expert witness designation, and that approval of the amended designation was a condition precedent to Zurich's acceptance of their Proposal.

Appellants' assertion that the mere use of their names could promote a better settlement for Zurich is wholly speculative and one that, in any case, Zurich could not have realized, having withdrawn its motion to designate Toothman as an expert before settling the Texas litigation. We therefore conclude that the allegations in Appellants' complaint fail to

9

state a plausible claim for unjust enrichment. <u>Twombly</u>, 550 U.S. at 570; <u>Rubenstein</u>, 825 F.3d at 214.

B.

The district court dismissed Appellants' state law claims against Zurich for unauthorized use of Devil's Advocate's corporate name and Toothman's personal name. Virginia Code § 8.01-40(A), in pertinent part, provides:

> Any person whose name, portrait, or picture is used without having first obtained the written consent of such person, or if dead, of the surviving consort and if none, of the next of kin, or if a minor, the written consent of his or her parent or guardian, for advertising purposes or for the purposes of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use. . . .

A corporate entity is not a "person" for purposes of the Virginia statute. The language of § 8.01-40(A) plainly includes only natural persons, as demonstrated by its discussion of the ramifications of the death of the aggrieved person. <u>See also</u> <u>Silver Ring Splint Co. v. Digisplint, Inc.</u>, 567 F.Supp.2d 847, 855 (W.D. Va. 2008) ("Although the term 'person' in a statute may often refer to both natural persons and corporations, the text of § 8.01-40 makes clear that this statute applies only to natural persons."). Accordingly, Appellants' claim against

10

Zurich for unauthorized use of Devil's Advocate's corporate name cannot proceed.

Toothman's claim for the unauthorized use of his personal name similarly fails. "[A] name is used for advertising purposes when it appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service." Town & Country Properties, Inc. v. Riggins, 457 S.E.2d 356 (Va. 1995); see also WJLA-TV v. Levin, 564 S.E.2d 383, 395 (Va. 2002) (quoting Riggins and similarly holding that use of a name for non-advertising purposes does not implicate § 8.01-40(A)).

Zurich's use of Toothman's name, in either a court filing or email to opposing counsel, does not constitute advertising. Nor did Zurich use Toothman's name in the course of its own business to buy, sell, or barter its goods or services. Va. Code § 8.01-40(A). Indeed, we are unable to discern what additional legal services Zurich could have intended to solicit by the mere use of Toothman's name and conclude Zurich did not violate § 8.01-40(A).

C.

In dismissing Appellants' trademark infringement claim as time-barred, the district court applied Virginia's two-year limitation period applicable to fraud claims. The Lanham Act,

which governs Appellants' trademark claims, does not specify a statute of limitations, but rather applies the analogous state law limitations period. See PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 121 (4th Cir. 2011)(finding false advertising claim under the Lanham Act analogous to Virginia fraud law and subject to two-year limitation).[4]

Devil's Advocate, however, insists that under Virginia law trademarks and brand names are property subject to a five year statute of limitations. In Lavery v. Automation Mgmt. Consultants, Inc., 360 S.E.2d 336 (Va. 1987), a case dealing specifically with the prohibition in Virginia Code § 8.01-40(A) regarding the unauthorized use of a person's name,[5] the Supreme Court of Virginia held that, where a defendant uses a plaintiff's name to bolster its proposal for a contract, a property right exists in the plaintiff's name or likeness that

---

[4] See also Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc., 87 F. Supp. 2d 567, 585 (E.D. Va. 2000) (stating that the applicable limitations period for federal and common law trademark infringement and unfair competition claims is two years); Unlimited Screw Prods., Inc. v. Malm, 781 F. Supp. 1121, 1125 (E.D. Va. 1991) ("Virginia's statute of limitations for fraud most closely resembles federal policy reflected in the Lanham Act.").

[5] Here, Appellants pressed a separate claim for violation of § 8.01-40(A), which, as we have already noted, the district court properly dismissed.

12

is subject to the five year property claim statute of limitations. <u>Lavery</u> simply has no bearing on federal trademark analysis under the Lanham Act. Accordingly, we agree with the district court's conclusion that Devil's Advocate's trademark infringement claim is time-barred under Virginia's two-year statute of limitations for fraud.

D.

The district court dismissed Appellants' claim against Zurich for copyright infringement, finding the Proposal lacked substantial similarity to the designation filed by Zurich in the Texas litigation. A plaintiff seeking to recover on a copyright infringement claim must prove not only that he "owned a valid copyright and that the defendant copied the original elements of that copyright," but also that the "defendant's work is 'substantially similar' to the protectable elements of the plaintiff's work." <u>Building Graphics, Inc. v. Lennar Corp.</u>, 708 F.3d 573, 577-78 (4th Cir. 2013) (quotations omitted).

Determining "substantial similarity" involves an analysis of extrinsic and intrinsic similarity. <u>Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.</u>, 790 F.3d 532, 537-38 (4th Cir. 2015) (citations omitted). We evaluate extrinsic similarity objectively, looking at "external criteria" to determine whether the alleged copy is substantially similar to

the "protected elements of the copyrighted work." Id. at 538 (quoting Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 435 (4th Cir. 2010)). In contrast, we consider intrinsic similarity from the "perspective of the [works'] intended observer," looking at the "total concept and feel of the works" to determine whether they are substantially similar. Id. (quoting Universal Furniture, 618 F.3d at 436).

The district court concluded that Appellants' copyright infringement claim failed for lack of substantial similarity. Although Appellants contend that only a jury may determine the extrinsic similarity prong, we observed in Copeland v. Bieber that

> . . . a district court may grant a motion to dismiss or summary judgment under the extrinsic prong alone. See Universal Furniture, 618 F.3d at 436 ("A court may grant summary judgment for defendant as a matter of law if the similarity between the two works concerns only noncopyrightable elements of the plaintiff's work." (quoting Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1257 (11th Cir.1999))); see also Lyons, 243 F.3d at 803 (court decides as a "matter of law" whether extrinsic similarity exists).

789 F.3d 484, 490 (4th Cir. 2015). Therefore, a district court may properly dismiss a copyright claim in the absence of substantial similarity.

Our review of the extrinsic nature of the two documents reinforces the conclusion that they lack substantial similarity.

14

The Proposal discusses Appellants' conflicts, Toothman's familiarity with the parties involved, his academic and professional experience, an overview of the billing structure, and some observations on the Texas litigation. The expert designation, by contrast, generally summarizes the subject matter on which Zurich's two experts would testify without specifying the material about which either intended to opine. Appellants accuse Zurich of plagiarizing the Proposal, but a review of the two documents convinces us not only that there is no substantial similarity, but little if any similarity.

With regard to the intrinsic similarity prong, we find scant similarity in the "concept and feel" between the Proposal and the designation Zurich submitted to the Texas court. Humphreys, 790 F.3d at 538. The former is an offer for services, covering a variety of topics, the latter a court filing discussing the subject matter on which Zurich's two experts would testify. It is implausible that any intended audience could view these two documents as intrinsically similar.

E.

Devil's Advocate's breach of contract claim fails for want of any evidence that the parties had the necessary meeting of the minds to form an enforceable contract. While it concedes the parties never physically executed a contract, Devil's Advocate

15

nevertheless argues that Zurich implicitly agreed to the terms of the Proposal.

In Charbonnages de France v. Smith, 597 F.2d 406, 414-15 (4th Cir. 1979), we concluded that when parties engage in lengthy, drawn out negotiations, which include a "jumble of letters, telegrams, acts, and spoken words," it is for a jury to decide whether they actually formed a contract. Id. at 415; see also Restatement (Second) of Contracts, § 20, Comment c. (1981).[6] No "jumble" of contract negotiations occurred in this case, but rather an unequivocal rejection by Zurich of the Appellants' Proposal as "unacceptable." J.A. 353-54. Toothman, moreover, acknowledged that Zurich "wanted to pay less." J.A. 373-74. Consequently, our holding in Charbonnages raises no bar to summary judgment.

Devil's Advocate's contract claim rests solely on its argument that the use of its name, in either the expert designation or email to opposing counsel, manifested Zurich's

---

[6] See also Cabot Oil & Gas Corp. v. Daugherty Petroleum, Inc., 479 Fed. Appx. 524, 530 (4th Cir. 2012) (unpublished) (describing the contours of the holding in Charbonnages and finding that a similar period of negotiations, with a similar amount of email correspondence, did not constitute a "jumble" that would preclude summary judgment).

assent to the contract. Dancy, however, testified that during a telephone call in early November he notified Toothman that Zurich could not retain him until allowed by the Texas Court to amend its expert designation. Toothman was fully aware of this condition precedent.

Toothman baldly asserts that this telephone call never happened, but the evidence in the record is otherwise. Particularly damning is Toothman's email of November 8, 2010, explicitly acknowledging his understanding that although Zurich had disclosed his name it had not yet retained him: "Naming me as a witness before we were retained is likely to cause some issues with Gardere and Voys."[7] J.A. 425. Toothman, a lawyer, plainly understood Zurich's obligation to disclose his name to the Texas court in order to obtain leave to amend its expert designation.

Finally, Appellants' argument that Zurich's designation triggered acceptance of the contract is unavailing. The record is devoid of any evidence, disputed or otherwise, that Zurich ever assented to a contract in this case.

---

[7] Gardere and Voys were two attorneys involved in the underlying Texas litigation that led to the billing dispute.

17

F.

The district court granted summary judgment to Zurich on Toothman's claim for conversion of his name and reputation.[8] To recover on a claim of conversion under Virginia law, a plaintiff must establish (1) that he owned or had a possessory right to the property at the time of the alleged conversion, and (2) that the defendant wrongfully exercised dominion or control over that property, thereby depriving plaintiff of its possession.[9] Economopoulous v. Kolaitis, 528 S.E.2d 714, 719 (Va. 2000). A plaintiff cannot satisfy the second prong where he has consented to the use of the subject property. See Williams v. Reynolds, 2006 WL 3198968, at *3 (W.D. Va. 2006) ("'[W]rongful exercise of dominion or control' cannot be established where the plaintiff

---

[8] Initially, the district court granted Zurich's motion to dismiss the conversion claim as to Devil's Advocate's trademarks or copyrights, but denied it as to Toothman's name and reputation. J.A. 180-81. Subsequently, it granted summary judgment to Zurich on the conversion claim as to Toothman's name and reputation. Appellants have failed to address the parts of the conversion claim dismissed by the district court, and thus have waived any appeal on those claims. See Locklear v. Bergman & Beving AB, 457 F.3d 363, 365, n. 2 (4th Cir. 2006).

[9] Although Toothman repeatedly argues that his name is a property right, no one, including the district court, has ever disputed this. For the purpose of our analysis here, we accept that courts may consider a name and reputation as property but need not address whether the mere use of a name by another somehow deprives the owner of its possession.

18

grants permission to the defendant to possess that property."). Indeed, Virginia has long recognized that implied consent is a bar to conversion claims. See, e.g., Kewanee Private Utilities Co. v. Norfolk Southern Ry. Co., 88 S.E. 95, 99 (Va. 1916)[10]; see also Restatement (Second) of Torts § 252. The question here is whether Toothman consented to Zurich's use of his name and reputation.

During his deposition, Toothman acknowledged that he knew Zurich needed the court's permission to designate him as an expert in the Texas litigation. J.A. 380. Furthermore, in an email to Dancy on November 8, 2010, he acknowledged that he had been "named" before being retained. J.A. 245. Nonetheless, he insists there is a difference between simply being named by Zurich and being designated by it as an expert in the Texas litigation.

This argument is unpersuasive. The manner in which Zurich disclosed Toothman's name, whether in an email, a court filing, discovery designation, or a telephone call is immaterial. The

---

[10] Other jurisdictions also have recognized implied consent as a bar to a conversion claim. See e.g., Bank of N.Y. v. Fremont Gen. Corp., 523 F.3d 902, 914 (9th Cir. 2008); Chemical Sales Co., Inc. v. Diamond Chem. Co., Inc., 766 F.2d 364, 369 (8th Cir. 1985); Lawyers Title Ins. Corp. v. Dearborn Title Corp., 904 F. Supp. 818, 821 n.2 (N.D. Ill. 1995).

19

fact remains Toothman knew that, in order to obtain permission to designate him as an expert, Zurich needed to disclose his name to the court and opposing counsel, and he permitted such disclosure.

Moreover, despite having knowledge by at least December 8, 2010, that Zurich had disclosed his name, Toothman failed to object until January 13, 2011.[11] He disputes that he did not promptly object, claiming that his email to Dancy on December 8 "expresses a lack of consent and outright concern." Appellants' Reply Brief at 21 n. 11. We are unpersuaded. Toothman's statement, "[n]aming me as a witness before we were retained is likely to cause some issues with Gardere and Voys," J.A. 425, evinces his concern about the effect disclosure of his name might have on his personal interactions with two of the lawyers involved in the case, both of whom he expected to see at an upcoming conference. It is not evidence of lack of consent to the use of his name.

---

[11] Dancy's uncontroverted testimony is that Toothman actually knew from the very beginning of the negotiations that Zurich had to disclose his name to the court as a condition precedent to Zurich's acceptance of the contract.

20

G.

Zurich is also entitled to summary judgment on Toothman's claim that it infringed the copyright to his resume. The "fair use" doctrine allows persons to use copyrighted material in a reasonable manner without permission. Such use is determined on a case-by-case basis, using the following four factors set out in 17 U.S.C. § 107:

(1)  the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2)  the nature of the copyrighted work;
(3)  the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4)  the effect of the use upon the potential market for or value of the copyrighted work.

In Bond v. Blum, 317 F.3d 385 (4th Cir. 2003), where a copy of a manuscript had been used as evidence in a trial, we noted that the "primary public purpose" of the Copyright Act was "induc[ing] release to the public of the products of [the author's or artist's] creative genius." Id. at 393. Additionally, we pointed out that "copyright protection does not extend to ideas or facts even if such facts were discovered as the product of long and hard work." Id. at 394. After weighing the factors of 18 U.S.C. § 107, we concluded that the defendant had not used the manuscript for monetary gain, and that its use had no negative impact on its marketability. Consequently, we

21

held that the use of the copyrighted manuscript in a court proceeding fell within the ambit of fair use.[12] Id. at 395-97.

The factors in Bond weigh heavily in favor of a finding of fair use here. Toothman's resume employed no mode of expression, but merely collected and restated known facts. Zurich's use was not for profit or in a traditionally commercial sense. Although reproduced in its entirety, Toothman's resume "was not used to undermine any right conferred by the Copyright Act." Id. at 396. Finally, Zurich's use of the resume did not affect its marketability. Unlike a manuscript, or other copyrightable works consumers might actually purchase, there is no market for Toothman's resume as such, nor have Appellants credibly argued otherwise.

---

[12] Several of our sister circuits also have concluded that use of copyrighted material in court proceedings is fair use. See e.g., Hollander v. Steinberg, 419 Fed. Appx. 44, 47-48 (2nd Cir. 2011) (affirming summary judgment on fair use where attorney sued opposing counsel for filing his essays in a judicial proceeding); Jartech, Inc. v. Clancy, 666 F.2d 403, 407 (9th Cir. 1982) (affirming fair use where adult films were copied for use in judicial proceedings, were not made for subsequent use or enjoyment, and were not for commercial use); Shell v. DeVries, 2007 WL 324592 (D. Colo. Jan. 31, 2007) (finding fair use where a portion of a copyrighted website was used as an exhibit to a motion for attorney's fees), aff'd 2007 WL 4269047 (10th Cir. 2007).

Finally, we conclude that the district court did not abuse its discretion in denying as futile Appellants' motion to amend the complaint. Under Fed. R. Civ. P. 15(a), the directive to grant leave to amend freely is not simply a suggestion, but rather a "mandate to be heeded." Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend should be denied "only when" there is the presence of bad faith, futility, or prejudice to the opposing party. See Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quoting Johnson v. Oroweat Foods Co., 85 F.2d 503, 509 (4th Cir. 1986)).

Although a district court possesses discretion to grant or deny the opportunity to amend, "an outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman, 371 U.S. at 182; see also Matrix Capital Mgmt. Fund LP v. BearingPoint Inc., 576 F.3d 172, 194 (4th Cir. 2009). Nevertheless, a detailed, explicit explanation of the reasons for denying leave to amend is not necessary when the reasons are evident. See Matrix Capital, 576 F.3d at 194.

When it denied Appellants' motion to amend their complaint to compensate for deficiencies in the counts dismissed, the district court noted that "leave to amend would be futile,

23

because [Appellants'] proposed amendments to the Complaint add no new facts that would allow [their] claims to survive a motion to dismiss." J.A. 714. Appellants' attempt to add four conclusory statements, most of which had previously been alleged or inferred, and to increase the amount owed under the alleged contract from $69,233.82 to $84,000.00, added no facts that would have altered the district court's earlier dismissal under Rule 12(b)(6). We have previously held that "[t]here is no error in disallowing an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 420-21 (4th Cir. 1990). Accordingly, the district court did not abuse its discretion.

## III.

For the reasons discussed, the judgment of the district court is

AFFIRMED.