[Civ. No. 4412.   Second Appellate District, Division One.—May 18, 1925.]

# AMERICAN FRUIT GROWERS, INC., OF CALIFORNIA (a Corporation), Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

[1] COMMON CARRIERS—DAMAGE TO PERISHABLE SHIPMENT—CAUSE OF DECAY—EVIDENCE—FINDING—APPEAL.—In this action against the initial carrier for damages because of decay in a carload of lettuce, as the evidence bearing upon the question as to the cause of, or responsibility for, the deterioration was in marked conflict, the finding of the trial court in favor of plaintiff on the question as to the cause of the rot and decay was conclusive on appeal.

[2] ID. — DETERIORATION OF PERISHABLE MERCHANDISE — MEASURE OF DAMAGES.—In such an action, where the issue is one of damages to a shipment of perishable merchandise, and the mode of ascertaining or fixing the damages is not limited or determined by contract between the parties, the basis of computing such damages is the difference between the market value of the commodity in good condition at the point of destination and the market value of the deteriorated product at the same point, and at the time of arrival.

[3] ID.—SALE OF MERCHANDISE BY FINAL CARRIER—AGENCY—VALUE—PRESUMPTION.—Where the ultimate consignee refuses to accept a shipment of lettuce because of the deteriorated condition thereof and instructs the final carrier to make proper disposal thereof, and such carrier proceeds promptly to comply with such instruction, by taking the lettuce to a town other than the destination point and selling it, and credits the amount of the sale to the account of plaintiff on its freight charges, the relation of agency toward plaintiff is created, and it will be presumed, in the absence of evidence to the contrary, that the sum derived from the sale of the lettuce was the result of the reasonable efforts and exercise of judgment on the part of said carrier and fairly establishes, for the purpose of computing the damage, the reasonable value of the damaged lettuce; and the action of said final carrier is binding upon the initial carrier.

(1) 4 C. J., p. 884, n. 37; 10 C. J., p. 389, n. 4.   (2) 10 C. J., p. 396, n. 77.   (3) 4 C. J., p. 736, n. 34; 10 C. J., p. 270, n. 24 New, p. 373, n. 83 New, p. 543, n. 82 New.

2. Measure of damages recoverable against carrier for partial damage to personalty, note, **Ann. Cas.** 1915D, 797. See, also, 4 **R. C. L.** 929.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Victor R. McLucas, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Frank Karr, R. C. Gortner and C. W. Cornell for Appellant.

Howard L. Grace for Respondent.

HAHN, J., *pro tem.*—This action is based upon a claim for damages alleged to have been suffered to a carload of lettuce delivered by the plaintiff at San Fernando, California, for shipment to Des Moines, Iowa, by the defendant and its connecting lines.   Judgment was rendered in favor of the plaintiff for the sum of $425.04, and from which judgment the defendant appeals.

Two propositions are urged by appellant in support of its appeal: First, that the damage suffered was not due in any manner to the fault or negligence of the defendant, but due wholly and solely to the action of the plaintiff in causing the carload of lettuce to remain at Des Moines, Iowa, for a period of seven days.   Secondly, that the evidence does not support the findings and judgment of the court in respect to the amount of damages suffered, and particularly that there is no evidence in the record showing the reasonable market value of the damaged lettuce at Milwaukee, to which the shipment was reconsigned by the plaintiff.

[1]   The record discloses that the evidence bearing upon the question as to the cause of, or responsibility for, the deterioration of the lettuce is in marked conflict, and, therefore, under the well-established rule, the finding of the trial court upon that issue will not be disturbed.

Much of the evidence in the case was presented to the court by way of stipulations, the following material matters being included in the stipulations: First, that the shipment of lettuce, when loaded into the car at San Fernando, California, on May 11, 1920, was in good condition; second, that the shipment arrived at Des Moines, Iowa, on May 20th, where it remained in the car, awaiting instructions from the plaintiff, until May 27th, on which date plaintiff directed the connecting carrier to reship to Milwaukee, Wisconsin,

the consignee being J. O. Franklin & Sons; third, that the car arrived at Milwaukee on the afternoon of May 30th, and on May 31st, J. O. Franklin & Sons, the consignees, were notified of its arrival; that on June 1st and 2d the lettuce was inspected by a government food inspector and was found by him to be affected with rot and decay; that on the morning of June 2d, immediately after the report of the inspector, the consignees by telephone notified the Chicago, Milwaukee & St. Paul Railway Company, which was the connecting carrier then having the car in custody, that they would not accept the lettuce because of its condition, and on the afternoon of June 2d confirmed this rejection by a written letter to the same effect; fourth, that upon refusal to accept the lettuce by the consignees at Milwaukee, the carrier, without notifying the consignor, diverted the carload of lettuce to Chicago, where, on June 8th, the lettuce was sold by the carrier for the sum of $201.23, which sum was credited to the account of the consignor on account of the freight charges; fifth, that the car of lettuce while en route was iced at the regular icing stations of the connecting lines, the stipulation setting forth the dates of icing and the amount of ice put into the bunkers at the various stations.

In addition to the foregoing stipulated matters, the plaintiff and defendant each produced an expert witness, who gave evidence as to the reasons or causes for the decay in the lettuce. Plaintiff produced as such expert witness one Goulder, who, after stating that he had had an extended experience over a period of years in connection with the shipment of lettuce, having observed and examined over one hundred carloads of lettuce, shipped, and basing his opinion upon his experiences and the stipulated matters and records, gave it as his opinion that the decaying and rotting of the lettuce was due to improper and insufficient refrigeration of the car. He testified that lettuce shipped in the condition as stipulated in this case, under proper refrigeration, would remain in good condition for a period of from twenty-one to twenty-eight days. He further gave it as his opinion, based upon the stipulated record of the amounts of ice put into the car at the icing stations, and also the stipulated record showing the temperature of the car when it arrived in Milwaukee, that there had evidently been a marked variation in the degrees of temperature in the car

during transit, and that this fact caused the decay and rot, which would not have resulted if an even temperature had been maintained and which would have been the condition had the car been properly iced.

On behalf of the defendant one Richardson testified as an expert. He stated that he had never had any experience with lettuce shipments, but had had experience in connection with the shipment of other perishable commodities. He gave it as his opinion that the decay and rot was due to heating of the lettuce, which could not be avoided even by proper refrigeration, and that the delay of the car for seven days at Des Moines, in his opinion, accounted for the heating which caused the decay.

Taking into consideration the relative experience of the expert witnesses, it may be fairly urged that there was an abundance, and even a preponderance, of evidence to support the finding of the court in favor of the plaintiff on the question as to the cause of the rot and decay.

The second point urged by the appellant presents a more difficult question. The plaintiff, as it is conceded it had a right to do, diverted the car from Des Moines to Milwaukee, where it arrived on the afternoon of May 30th. The connecting carrier, the Chicago, Milwaukee & St. Paul Railway Company, on the morning of May 31st, notified J. O. Franklin & Sons, the consignees at Milwaukee, of the arrival of the car. On June 1st and 2d a government food inspector inspected the lettuce and made his written report, showing the lettuce to be in a decaying and rotting condition; whereupon, on the morning of June 2d the consignee, over the telephone, notified the carrier that they would not accept the shipment of lettuce because of its deteriorated condition, and on the afternoon of June 2d confirmed this rejection with the following writing:

"Milwaukee, Wisc., June 2nd, 1920.
"W. G. Miller, Agt.
    "C. M. & St. P. Ry.
        "City.
"Dear Sir:
"Confirming telephone conversation of this P. M. with your Mr. Kosky, we have abandoned to the C. M. & St. P. car PFE 6099 shipped from San Fernando, Calif., May 11, 1920, containing 320 crates head lettuce. This car arrived

at Milwaukee May 31st, and on account of poor condition
we are unable to realize freight charges. You will, there-
fore, make proper disposal of this car.

"Yours very truly,

"J. O. Franklin & Sons."

Thereupon, without any further notice to the consig or,
the carrier shipped the carload of lettuce to Chicago and
there, on June 8th, sold the lettuce for $201.23, which
amount was credited to the plaintiff on account of the claim
for freight charges.

It was stipulated by the parties that the market value of
the lettuce, if it had arrived in good condition at Milwaukee,
on May 31st, was from $2 to $2.25 per crate. But there
was no stipulation, or, in fact, any evidence, as to the market
value of the lettuce in its deteriorated condition at Mil-
waukee on the date of its arrival; nor was there any evidence
as to the market value of lettuce in good condition, or in the
deteriorated condition, in Chicago at the date of the sale,
or at any time, unless the fact that the lettuce sold at
Chicago on July 8th, for $201.23 could be construed as evi-
dence of the market value of the deteriorated lettuce. Under
this second point appellant points out that there is no find-
ing on the question of market value of the deteriorated
lettuce at Milwaukee.

This lack of evidence as to the market value of deterio-
rated lettuce, together with the fact that there is no finding
on that question, is urged by the appellant as fatal to the
judgment.

[2] It is well settled that where the issue is one of dam-
ages to a shipment of perishable merchandise, as in this case,
and the mode of ascertaining or fixing the damages is not
limited or determined by contract between the parties, the
basis of computing such damages is the difference between
the market value of the commodity in good condition at the
point of destination, and the market value of the deterio-
rated product at the same point, and at the time of arrival.
It must also be conceded that the findings are inadequate
and lacking in several respects. In view of the fact that we
believe the judgment should be affirmed by reason of other
considerations, the defects above referred to as urged by the
appellant become immaterial.

[3]   The position and conduct of the Chicago, Milwaukee & St. Paul Railroad, the connecting carrier at Milwaukee having in charge the carload of lettuce, and whose conduct in the matter is, of course, binding upon the defendant here, may be viewed from two standpoints, either one of which leads us to the conclusion that the judgment of the trial court was proper. Franklin & Sons, the consignees of the lettuce at Milwaukee, in their letter to the carrier refusing to accept the shipment of lettuce because of its damaged condition, closed their letter with the following instruction: "You will, therefore, make proper disposal of this car."

Assuming that Franklin & Sons were the agents of the plaintiff for the purpose of directing disposal of the lettuce —and under the evidence as appears from the record the defendant would hardly be in a position to controvert this assumption—it appears that upon receipt of this letter the carrier proceeded at once to comply with the instruction. An agency was thus created under which the law imposed upon the carrier the duty of using all reasonable efforts and its own best judgment in disposing of the shipment of lettuce. The carrier proceeded promptly to make disposition of the lettuce, and immediately after receiving the letter from Franklin & Sons, shipped the car of lettuce to Chicago and there sold it. It may be fairly presumed, and there is absolutely no evidence in the record to thwart this presumption, that the agent of the carrier concluded that Milwaukee did not offer an opportunity for "proper disposal of the car," and believing that Chicago furnished a better market, shipped the car at once to Chicago. There is no evidence in the record to show that the defendant did not exercise all reasonable efforts and judgment in accomplishing the sale of the lettuce with a view to the consignor suffering the least possible loss; and upon the sale of the lettuce the carrier credited the amount of the sale to the account of the plaintiff on its freight charges. The conduct of the carrier from the time of receiving the letter rejecting the lettuce up to the point of crediting the proceeds from the sale to the plaintiff was consistently that of an agent, and in good conscience the defendant will not now be heard to deny such a relation in disposing of the carload of lettuce.

If, on the other hand, it could be successfully controverted that an express agency had been created, by reason of the

lack of authority on the part of Franklin & Sons to create such a relation as between the plaintiff and the carrier, there was unquestionably an implied agency or trust created in the carrier when the consignees refused to accept the shipment. In the case of *Merchants & Miners' Transp. Co.* v. *Branch,* 282 Fed. 497, the court, in dealing with a similar question arising out of damages suffered to a cargo of potatoes, said: "When goods cannot be delivered as directed, the carrier becomes a trustee for the owner, charged with the duty to use all reasonable efforts to protect him from loss." This rule seems to be well established by the authorities, and unquestionably the carrier proceeded to deal with the carload of lettuce on that theory, if not upon the theory of express agency. Upon either theory, the result is the same; that in the absence of any evidence to the contrary, it will be presumed that the sum derived from the sale of the lettuce was the result of the reasonable efforts and exercise of judgment on the part of the carrier and fairly establishes, for the purpose of computing the damage, the reasonable market value of the damaged lettuce.

The points that we have considered are the only ones urged by appellant, and we feel that the other points suggested do not require consideration. It suffices to say that, in view of the considerations upon which we base our conclusion, they are not material.

Judgment affirmed.

Conrey, P. J., and Curtis, J., concurred.