In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor.

In re **EXCEL PACKING COMPANY,** Reclamation Petition.

No. 70–347.

United States District Court, E. D. Pennsylvania.

Nov. 3, 1972.

Marvin Comisky, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., sp. counsel to Trustees.

Robert W. Blanchette, Philadelphia, Pa., for Trustees.

Daniel R. Glickman, Jochems, Sargent & Blaes, Wichita, Kan., Lewis Kates, Kates, Livesey & Edelstein, Philadelphia, Pa., for petitioner.

## MEMORANDUM AND ORDER
### NO. 1008

FULLAM, District Judge.

Excel Packing Company[1] has filed a petition for reclamation of the proceeds from the sales of two damaged shipments of beef. The shipments were made on May 2 and May 6, 1970, from Wichita, Kansas, to the Great Atlantic and Pacific Tea Company ("A & P") at Hawthorne, New Jersey. The originating carrier was the Rock Island, and the terminating carrier was the Debtor. The shipments were made in trail-vans (i. e., trailers containing the beef were shipped by flat car).

At some point in the journey, the refrigeration equipment of the trailers was vandalized or otherwise damaged, resulting in some spoilage; the shipments were rejected by the consignee, A & P, upon arrival on May 8 and May 13, respectively. In each case, the Debtor immediately notified the consignor by telephone, requesting instructions. In each case, the consignor, by telephone call, confirmed immediately by telegram, advised the Debtor ". . . we are rejecting same to you and requesting immediate payment of salvage and balance upon presentation of claim."

Thereafter, the Debtor sold the two shipments of partially spoiled beef for $7,486.70 and $12,742.92, respectively. The salvage proceeds were received by the Debtor on May 25 and June 2, 1970, respectively, and were deposited in a bank account of the Debtor maintained at Philadelphia, for "Miscellaneous Cash Receipts." The deposits were reflected on the Debtor's books as proceeds from sale of salvaged property. The bank account in which the proceeds were deposited contained funds from various sources, and was not limited to salvage proceeds. The average daily balance in

the account was considerably in excess of $1 million. At no time since the checks were deposited has the balance in that account been reduced below the amount of those deposits. In short, it would be possible to trace the proceeds from the sales of the damaged shipments in question to funds still on deposit.

The petitioner made claim against the Debtor for the full value of the shipments. In connection with the proof of claims program,[2] the Debtor has acknowledged the validity of the full amount of petitioner's claims. With respect to the first shipment, the Debtor has acknowledged owing a total of $17,060.10; with respect to the second shipment, $14,689.-69; and, with respect to an unrelated claim, $3,283.28.

The legal theory upon which the reclamation petition is based may be stated as follows: The beef was owned by the petitioner; the Debtor was merely a bailee; when the Debtor sold the beef, it did so as agent for the petitioner, and for the account of the petitioner. The proceeds from the sales never became the property of the Debtor, but were always the property of the petitioner. The Debtor holds these proceeds in trust for the petitioner, hence the proceeds never became part of the Debtor's estate, and should be restored to the petitioner.

The Trustees take the position that, while the transaction might perhaps have been structured in the fashion now contended for by the petitioner, that was not the way it was done. In the circumstances revealed by this record, there was no trust relationship with respect to the proceeds, and the petitioner is merely a general creditor of the Debtor's estate.

When the consignee of a shipment of freight rejects the shipment be-

---

1. The record discloses that Excel Packing Company is now a division of Kansas Beef Industries, Inc. Whether these are separate entities, and whether the named petitioner is actually a real party in interest, is not altogether clear. For pres-

ent purposes, I have adopted the nomenclature employed by the parties.

2.. The Debtor's reorganization petition was filed June 21, 1970.

cause of damage, the carrier is obliged promptly to notify the shipper and request instruction as to the disposition of the damaged goods. Generally speaking, the shipper has two choices: he can dispose of the goods himself, and make claim against the carrier for the difference between the original value of the shipment and the proceeds from its salvage; or he can release the goods to the carrier and make claim against the carrier for the full value of the goods. In the latter situation, of course, the carrier is in a position to reduce its total liability by the amount of the salvage proceeds.

In the present case, it is clear that the shipper did not elect to retain the goods and dispose of them itself. Of course, it is theoretically possible for a shipper to direct the carrier to dispose of the goods as the agent of the shipper, and for the account of the shipper. The petitioner contends that this is what happened in the present case. However, the evidence does not bear out this assertion. In each case, the shipper notified the Debtor "we are rejecting [the shipment] to you and requesting immediate payment of salvage and balance upon presentation of claim." This language is inconsistent with continued ownership of the goods by the shipper. The shipper made no attempt to direct or control the actual disposition of the shipment. Moreover, the shipper did make a claim against the Debtor for the full amount.

And finally, there is no evidence that the sale of the meat by the Debtor was in the form of a sale by an agent, for the account of a principal. The checks received in payment are not in evidence. All that has been shown is that the proceeds were paid to the Debtor, but there is no suggestion that they were paid to the Debtor in any agency capacity.

A further factor should be mentioned. Whenever a freight shipment travels over the lines of several railroads in the course of its journey, and arrives at its destination in damaged condition, the terminating carrier is not necessarily the carrier ultimately liable to pay for the damage. Hence it is common prac-

tice, when the terminating carrier disposes of the damaged goods, for that carrier to remit the salvaged proceeds to the shipper within a reasonable time after the sale. If this payment is made before the shipper has filed a claim, it serves to reduce the amount of the claim eventually filed. If the shipper has already filed a claim, the payment serves as a payment on account thereof. What remains open for decision in such cases is the question of which carrier is liable for the balance. Thus, the language in the petitioner's telegrams, "requesting immediate payment of salvage and balance upon presentation of claims" sheds no light on the precise issues involved in the present controversy. It is as consistent with the legal theory of the Trustees as it is with the legal theory of the petitioner.

The shipper can recover from any of the carriers involved in the shipment. The final responsibility is determined as among the carriers themselves. When a terminating carrier sells the damaged goods and receives the salvage proceeds, it may not be in a position to know whether the proceeds will ultimately be payable to the shipper, to some other carrier which has paid the shipper's claim in full, or to itself, in reduction of its own liability to the shipper.

■ The petitioner's brief, and the cases and authorities cited therein, 13 Am.Juris.2d Carriers, § 332, pp. 316–817, § 434, pp. 909–10; Alabama GSR Company v. McKenzie, 139 Ga. 410, 77 S.E. 647 (1913); Merchants and Miners Trans. Co. v. Branch, 282 F. 494 (4th Cir. 1922), and American Fruit Growers v. Pacific Electric Railway Co., 72 Cal. App. 682, 238 P. 105 (1925), convincingly demonstrate that a carrier owes a quasi-fiduciary duty to the shipper, and is required promptly to alert the shipper to the non-deliverability of the goods, and to minimize the harm. They also are consistent with the notion that, in some situations, depending upon what action the shipper takes after learning of the situation, the damaged goods and their proceeds can remain the property of the shipper. If that were the situa-

tion here, the reclamation petition should be granted.

But the difficulty in the present case, as discussed above, is that the shipper "rejected" the goods "to" the carrier, and contented itself with the claim for the value of the shipment. The proceeds from the salvage were paid to the Debtor; there has been no showing that they were paid to the Debtor as agent or in any fiduciary capacity; and the proceeds were commingled with other funds of the Debtor. Thus, the principles set forth in the Opinion of this Court in In Re Penn Central Transportation Company, Greyhound Lines, Inc. Reclamation Petition, 328 F.Supp. 1278 (1971) (Opinion and Order No. 265) are applicable.

To summarize, I have concluded that the petitioner has failed to sustain its burden of proving that the salvage proceeds were held in trust. The petition will be denied.